**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**FREEDIE LEE COOK**

**LA. DOC #247356**

**CIVIL ACTION NO. 3:15-cv-0436**

**SECTION P**

**VS.**

**JUDGE ROBERT G. JAMES**

**WARDEN BURL CAIN**

**MAGISTRATE JUDGE HAYES**

**REPORT AND RECOMMENDATION**

*Pro se* Petitioner Freddie L. Cook, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on February 25, 2015. [doc. # 1]. Petitioner attacks his aggravated incest conviction and the life sentence imposed by the Fourth Judicial District Court, Ouachita Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

**Background**

The Louisiana Second Circuit Court of Appeal set forth the underlying facts in this case as follows:

> On May 20, 2011, the state filed a bill of information charging the defendant with one count of aggravated incest of his step-granddaughter, S.G. She was 16 at the time of the defendant's arrest. The following facts were adduced at trial.
>
> The defendant met S.G.'s grandmother, Mae Cullens, while he was serving a ten-year sentence for his 1996 convictions of aggravated incest involving his biological daughter, Kimberly Cook, and molestation of a juvenile involving his stepdaughter by an ex-wife. Apparently, Ms. Cullens was involved in a prison ministry, and had ministered to the defendant during his incarceration. Shortly after his release from prison, the defendant and Ms. Cullens married in 2001.
>
> Initially, Ms. Cullens' daughter, Edda Cullens, opposed the marriage because the defendant was a convicted sex offender. Edda later began to trust the defendant,

believing he "found the Lord" and had changed. In fact, she allowed the defendant to drive her children to and from school and she allowed the defendant to interact with her children without proper supervision.

Shelley Hoard, who attends the same church as S.G., is a registered nurse with behavioral health experience. She conducts assessments on victims of depression, incest, and sexual abuse. Specifically, she works with children who are victims of sexual abuse. Ms. Hoard testified that she noticed a change in S.G.'s behavior, approached her, and asked if there was something wrong. Although S.G. did not report any specific abuse at that time, she did present these questions to her:

> What if somebody who is very nice to your family and doing good things for your family but they are doing bad things to you? What should I do?

Ms. Hoard advised S.G. to report it. After this exchange, Ms. Hoard relayed this information to Corporal Kalinciar Hunter, the resource officer at Richwood High School.

Corporal Hunter, who is employed by the Ouachita Parish Sheriff's Office ("OPSO"), testified that she is responsible for "keeping order" at the school, and that she is familiar with all of the students who attend Richwood High School. When Ms. Hoard reported the suspected abuse to Corporal Hunter, she approached S.G. on March 10, 2011, to ask her if anything was "going on in the home." S.G. denied that any abuse was taking place, further stating, "It was no big deal. I am fine." Corporal Hunter forwarded her report to OPSO's investigation department and Child Protective Services ("CPS"). Corporal Hunter testified that Patrick Staten, from CPS, came to Richwood to interview S.G. After this interview, Mr. Staten expressed his intent to contact S.G.'s mother, Edda.

Corporal Hunter testified that on April 6, 2011, a meeting took place between herself, Edda, and S.G., upon Edda's request. During this meeting, Edda relayed that Mr. Staten had contacted her to inform her of the suspected abuse. She further explained that her reason for requesting this meeting was because S.G. felt more comfortable talking to Corporal Hunter. S.G. told Corporal Hunter that her step-grandfather, the defendant, had been sexually abusing her since she was 11 years old. She expressed that she was tired of the abuse and the secrets, and as a result had taken a bottle of pills. Corporal Hunter testified that S.G. was visibly upset, crying and shaking, during the entire meeting.

Corporal Hunter noted that S.G., who was usually a pleasant and "high achieving" student, began to exhibit disrespectful behavior toward authority, talk excessively in class, and participate in fights. At the conclusion of her testimony, Corporal Hunter testified that she witnessed the defendant dropping S.G. off late to school some

mornings, and picking her up some evenings. At times, the defendant would also check S.G. out of school early.

Sergeant Daryl Frost of the OPSO testified that he received a report from Corporal Hunter on March 14, 2011, but did not act at that time because S.G. had denied that any abuse had taken place. When Sergeant Frost was contacted on April 13, 2011, after S.G. admitted that the abuse had taken place, he obtained a warrant and arrested the defendant. A rape kit was not conducted on S.G. because there had not been any sexual contact within the previous 72 hours.

Alfred "Hatchet" Carter, the defendant's friend and next door neighbor, testified about an incident that occurred at his home, while a birthday party took place at the defendant's home. During the party, the defendant came over to Mr. Carter's house to watch movies. Shortly after the defendant arrived, S.G. came over to Mr. Carter's house, looking for him. Mr. Carter went to the restroom, only to return approximately ten minutes later to witness the defendant and S.G. on the floor. S.G. and the defendant jumped up, straightening their clothes.

When asked if he had witnessed any sexual act occur between the defendant and S.G., Mr. Carter denied seeing any sexual act. However, Officer Charles Roark of the Monroe Police Department testified that he was asked to administer a polygraph test to Mr. Carter. Before the test was administered, Mr. Carter interrupted Officer Roark and informed him that he had, in fact, witnessed S.G. and the defendant having sex on the floor in his home.

S.G., who was 17 years old at the time of trial, testified that she initially denied the abuse because she did not want to get anyone in any trouble and she did not want anyone to know. She explained that she was afraid that her mother would kill the defendant if she found what he was doing, her mother would consequently go to jail, and that she would be alone.

S.G. stated that the defendant, whom she called "Brother Fred," was a minister who conducted church in his home for their family. She testified when she was 11 years old, the defendant owned a silver van and had offered to teach her to drive in the Monroe Civic Center parking lot. During these outings, the defendant would offer to pay her to let him "touch her private area" and perform oral sex on him. She also recalled the incident that occurred at Mr. Carter's house, stating that she and the defendant did have "sexual contact" while Mr. Carter was out of the room. S.G. also testified that the defendant would stop at various places on the way to school so that they could engage in sexual activity.

S.G. further testified she was 14 years old the first time she and the defendant had actual intercourse. Prior to that time, the defendant would attempt penetration, but

> he would stop when she told him it was hurting. This abuse continued until March 2011, at which time the [sic] S.G. was 16 years old.
>
> The defendant was found guilty of aggravated incest, adjudicated a fourth felony offender, and sentenced to life imprisonment.

*State v. Cook*, 127 So. 3d 992, 994-96 (La. App. 2 Cir. 2013).

The Second Circuit Court of Appeal affirmed Petitioner's conviction and sentence on November 20, 2013. *Id.* at 999. The Louisiana Supreme Court denied Petitioner's subsequent application for writ of certiorari on May 30, 2014. *State v. Cook*, 140 So. 3d 1174 (La. 2014). Petitioner did not seek further direct review before the United States Supreme Court, and he did not pursue collateral relief.

Petitioner filed the instant Petition on February 25, 2015. [doc. # 1]. He raises two assignments of error: ineffective assistance of counsel and insufficient evidence. *Id.* The matter is now before the Court.

## Law and Analysis

### I. Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II. Petitioner's Claims

### A. Claim One: Ineffective Assistance of Counsel

Petitioner claims that counsel rendered ineffective assistance when counsel elicited incriminating testimony from a defense witness. [doc. # 1-1, p. 13]. The appellate court set forth the applicable background to this claim, as well as its ruling, as follows:

Ms. McNeal, the defendant's cousin, spiritual counselor, and minister, testified that

she counseled the defendant since the time he met and married Ms. Cullens. When defense counsel questioned Ms. McNeal about the counseling, she testified:

Q: Were there problems in their relationship?

A: Yes.

Q: And they consulted you concerning those problems?

A: Yes. He did.

Q: Did any of the problems involve the grandchildren?

A: Yes.

The state objected, arguing that it was hearsay, and a sidebar was held. Then, the jury was removed and argument was presented on the objection. The trial court determined that the evidence would be inadmissible, and the defense counsel withdrew the question. The defendant contends that the jury heard the answer to the question before defense counsel withdrew the question. He believes this action “bolstered” the state's case because the defense failed to elicit the actual issue with the grandchildren, and made it appear as though his problem with the grandchildren was sexual in nature.

* * *

The defendant argues that his counsel asked Ms. McNeal whether the problems in his marriage stemmed from Ms. Cullen's grandchildren, without forming a proper plan regarding how to connect this information to the next link in the chain of evidence he was attempting to adduce. Even though the state's objection led to the trial court ruling that the evidence was inadmissible, and the defense counsel withdrew the question, the jury did hear the answer. The defendant believes that his counsel's action, or lack thereof, strengthened the state's assertion that any problems with his step-grandchildren were sexual in nature. He concluded his argument with the statement that “had the defense not asserted that he had marital problems that involved his grandchildren, the jury would have likely returned a verdict of not guilty.”

The defendant has not proven that his trial counsel's performance prejudiced him in a way that deprived him of his right to a fair trial. There is no showing that had his counsel not presented the question regarding the defendant's relationship woes regarding his grandchildren, he would not have been convicted of the instant offense. The defendant has not met his burden pursuant to *Strickland v. Washington, supra*,

> of proving that his counsel's performance was deficient and that as a result, he was deprived of a fair trial. This assignment of error bears no merit.

*Cook*, 127 So. 3d at 998-99.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Further, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

When applying the first prong of *Strickland*, federal courts do not second-guess the attorney's decision from the distorting perspective of hindsight; rather, they presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The burden, therefore, is on the petitioner to show that counsel's representation fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994). In other words, the petitioner must demonstrate that counsel's representation was objectively unreasonable. *Strickland*, 466 U.S. at 688.

To establish prejudice, the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "That requires a substantial, not just conceivable, likelihood of a different result." *Cullen*, 131 S. Ct. at 1403 (internal quotation marks and citation omitted). Stated differently, a petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Finally, when review is governed by the AEDPA, review of the state court's resolution of the ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), since the question is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. To obtain relief, a petitioner must show that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87. "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

Here, the Court finds that the state appellate court was not unreasonable in declining to second-guess counsel's decision to pursue the line of questioning cited above. Even assuming counsel did err, the alleged error hardly amounts to an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."[1] *Strickland*, 466 U.S. at 687. Asking, or refraining from asking, certain questions of witnesses is inherently a matter of trial strategy. A defense counsel's trial strategy, in turn, does not raise constitutional concerns. *See U.S. v. Hughes*, 635 F.2d 449, 452 (5th Cir. 1981) ("A defense counsel's trial strategy, which would include his asking or refraining from asking certain questions of witnesses, does not reach constitutional proportions.").

Petitioner also fails to show that the appellate court's application of *Strickland's* prejudice prong was so lacking in justification that there was an error well-understood and comprehended in existing law beyond any possibility for fairminded disagreement. Even if, as Petitioner argues, the witness's testimony indicated that "the problem in [Petitioner's] marriage was his lust for his grandchildren,"[2] this testimony was merely consistent with the other incriminating testimony presented at trial. Thus, even if counsel chose not to question the witness about Petitioner's relationship with his wife, there is no reasonable probability that the jury would have rendered a different verdict. This claim should be **DENIED**.

B. Claim Two: Insufficient Evidence

Petitioner claims that the evidence presented at trial was insufficient to find him guilty of

---

[1] Petitioner even concedes that counsel was attempting to "point out another problem with the grandchildren, perhaps something that would shed light on why S.G. would make up the story in the first place." [doc. # 1-1, p. 15].

[2] [doc. # 1-1, p. 15].

the charged crime. [doc. # 1-1, p. 17]. He argues, in particular, that "he was convicted solely on the testimony of S.G.," that S.G.'s testimony was inconsistent with statements she made in the past, that S.G.'s testimony was inconsistent with the testimony of other witnesses, and that the State presented no physical evidence. *Id.* at 17-18.

When a *habeas* petitioner asserts that the evidence presented was insufficient to support his conviction, the limited question is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Here, invoking *Jackson*, the Second Circuit Court of Appeal began review by referencing the pertinent definition of aggravated incest found, at the time,[3] in LA. REV. STAT. § 14:78.1:

> A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological,

---

[3] In 2014, LA. REV. STAT. § 14:78.1, entitled "Aggravated Incest," was repealed for the purpose of redesignating the term "incest." As of June 12, 2014, "aggravated incest" is now deemed, "aggravated crime against nature." *See* LA. REV. STAT § 14:89.1.

> step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
>
> B. The following are prohibited acts under this Section:
>
> (1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
>
> (2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

*Cook*, 127 So. 3d at 997. The appellate court then summarized S.G.'s trial testimony:

> S.G., who was 17 at the time of trial, testified that the defendant sexually abused her over a span of several years. . . . [S]he testified when she was 11 years old, the defendant owned a silver van and had offered to teach her to drive in the Monroe Civic Center parking lot. During these outings, the defendant would offer to pay her to let him "touch her private area" and perform oral sex on him. Corroborating Mr. Carter's testimony, S.G. recalled the incident that occurred at his house, stating that she and the defendant did have "sexual contact" while Mr. Carter was out of the room.

*Id.* at 998.

Applying *Jackson*, the Second Circuit held that "S.G.'s testimony, in addition to other evidence presented, sufficiently supported the defendant's aggravated incest conviction." *Id.* The court reasoned that there were no internal contradictions in S.G.'s testimony, that S.G.'s testimony did not contradict any physical evidence, and that "[s]light discrepancies, such as the color of the vehicle, or whether S.G. initially denied that the sexual abuse took place to protect her mother, [did] not cast doubt on S.G.'s credibility." *Id.*

A review of the trial record shows that the appellate court's application of *Jackson* was

objectively reasonable. This claim is without merit and should be **DENIED**.

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of habeas corpus filed by Petitioner Freddie L. Cook, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days**

**from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 14th day of July, 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE